UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANNON BREAUX ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-1636 C/W**<br>**05-0896 AND 05-0897** |
| **HALLIBURTON ENERGY SERVICES, INC. ET AL.** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** the "Motion for Partial Summary Judgment" of Era Aviation, Inc. and Rowan Companies, Inc. is **GRANTED**. (Document # 566.)

**IT IS FURTHER ORDERED** that Halliburton Energy Services, Inc.'s "Motion for Summary Judgment" is **DENIED** as to the issue of coverage under the Comprehensive General Liability Policy and **GRANTED** as to the Excess Policy. (Document #567.)

### I. BACKGROUND

The case arises out of a helicopter crash on March 23, 2004. A Sikorsky S-76 helicopter, owned and operated by Era Aviation, Inc. (Era), a subsidiary of Rowan Companies, Inc. (Rowan) departed Galveston, Texas with two crew members and eight passengers. The helicopter was under contract to Union Oil Company of California (Unocal) to transport oil field

workers to an offshore drilling vessel, the Discoverer Spirit, operated by Transocean Offshore Deepwater Drilling, Inc. (Transocean). Unocal had previously contracted with Transocean for the services of the Discoverer Spirit in connection with the operation of Unocal's offshore wells.

Four of the eight passengers were employed by Halliburton Energy Services, Inc. (Halliburton): Tyler Breaux, Thomas Wayne Jackson, Jr., Andre Lake, and Jeffrey Willis Langley. The aircraft crashed during the flight, and all ten occupants were killed.

Two contracts are relevant to the indemnity and insurance issues in this case: a "Commercial Agreement for Helicopter Transportation Services" (the Era/Unocal agreement), and a "Mutual Hold Harmless and Indemnity Agreement" (the Rowan/Halliburton agreement). Under the Era/Unocal agreement, Era agreed to release, defend and indemnify Unocal, its contractors and subcontractors from liability from all claims, including *inter alia* "death resulting from [Era's] ownership, operation, maintenance or use of aircraft." The Unocal Groups was named as an additional insured on the required policies to cover the indemnification provisions. Halliburton was a contractor/subcontractor of Unocal. Under the Rowan/Halliburton agreement, Rowan (and its subsidiary, Era) and Halliburton apportioned their respective liabilities when Halliburton's personnel or property were located on Rowan's property, even though Rowan had not hired Halliburton, but Halliburton and Rowan are providing goods or services to the same customer on a project. Halliburton agreed to hold harmless and indemnify Rowan and Era against claims arising from those circumstances and to name Rowan and Era as additional insureds. At the time of the accident, the Halliburton employees were on Era's property, and Era and Halliburton were furnishing services to Unocal.

Shannon Breaux, individually, and as administratrix of the succession of Tyler Breaux, filed suit against Era and Rowan, among others, for damages arising out of the death of her husband. In June 2004, the Breaux actions was removed to federal court and consolidated with two other actions arising out of the same accident.

Era and Rowan filed a third-party complaint against Halliburton seeking defense, indemnity and additional insured status under the Rowan/Halliburton agreement. Halliburton filed a counterclaim against Era and Rowan seeking defense, indemnity, and additional insured status relating to all claims made against Halliburton.

The subject of this motion is the Rowan/Halliburton agreement.[1] The agreement details each party's indemnity obligation and requires Rowan and Halliburton to maintain four types of insurance: comprehensive general liability; comprehensive automobile liability; workers' compensation and employer's liability; and excess insurance. The indemnity obligations and the insurance obligations are separate and distinct duties under the agreement.

While the case was pending in another section of this court, Era and Rowan moved for partial summary judgment on the issue of Halliburton's duty to defend and indemnify Era and Rowan and accord them additional insured status with respect to the Breaux claims. Halliburton filed a cross motion for summary judgment against Era and Rowan on the indemnity claim and moved for a finding that it is entitled to defense, indemnity, and additional insured status from Era and Rowan. Judge Zainey ruled that the Rowan/Halliburton agreement requires Halliburton

---

[1] The agreement was executed by Rowan and Halliburton on August 26, 2003, but the provisions inured to the benefit of Era as Rowan's subsidiary. See exh. A (hold harmless agreement made on behalf of Rowan "and its subsidiary and affiliated companies").

3

to indemnify Era for the Breaux claims and entitles Era to additional insured status on the policies Halliburton obtained to insure its indemnity obligation. Document # 197. Judge Zainey summarized as follows:

> In sum, the Rowan/Halliburton Agreement applies under these facts and requires Halliburton to indemnify Era for the Breaux claims and for amounts paid in settlement to the Jackson and Langley survivors. Moreover, the agreement expressly entitles Era to additional insured status on whichever policies Halliburton obtained to insure its indemnity obligations under the Rowan/Halliburton Agreement. Unfortunately, the Era/Unocal Agreement functions to preclude Era from obtaining the benefits of the Rowan/Halliburton Agreement.

Id. at 11. Further, Judge Zainey concluded that the Era/Unocal agreement applies to Era's claim against Halliburton because it "applies specifically to Era's performance of aviation services for Unocal." Id. at 13. "Nevertheless, the Era/Unocal agreement does not entitle Halliburton to additional insured status. Id. "The agreement gives no indication that Halliburton is part of the Unocal Group which is the only entity(ies) entitled to additional insured status under the exact terms of that agreement." Id.

The court concluded that, because both agreements apply, Era has an indemnity claim against Halliburton. However, "that claim falls squarely within the realm of liability for which Era is committed to indemnify Halliburton." Moreover, "Halliburton has an indemnity claim against Era but that claim falls squarely within the realm of liability for which Halliburton has agreed to indemnify Rowan, and consequently Era." Accordingly, "the two agreements at issue function to 'cancel out' the reciprocal indemnity claims in this case." Therefore, Era could not recover from Halliburton on its indemnity claim, and Halliburton could not recover from Era.

The district court further concluded that "Era is not entitled to additional insured status on the Halliburton CGL policies that insured Halliburton's obligation under the Rowan/Halliburton agreement." Id. at 14. Because the indemnity obligations of the parties have been rendered "nugatory" by Era's execution of two potentially conflicting agreements, the court concluded that "[i]t would be unfair to allow Era to receive indemnification via the additional insured provisions when its obligations under a separate agreement preclude it from receiving indemnification on the claims at issue." Id. Halliburton's motion for summary judgment was granted "insofar as Halliburton seeks a ruling that it does not owe Era, Rowan and/or their insurers defense, indemnity, or additional insured status under the Rowan/Halliburton Agreement." Id.

The parties filed cross-appeals in the United States Court of Appeals for the Fifth Circuit. The Court of Appeals affirmed the judgment of the district court that the claims of Era and Rowan against Halliburton are covered by the Era/Unocal agreement. Breaux v. Halliburton Energy Serv., 562 F.3d 358, 365 (5th Cir. 2009). Because Halliburton is undisputedly an indemnitee, "Era and Rowan had express notice of its indemnity obligation to [Halliburton] for all liability arising out of those claims." Id. at 366. The Court of Appeals further held that "there is no sound basis to conclude that the Rowan/Halliburton agreement supersedes the Era/Unocal agreement." Id. Moreover, the parties "clearly anticipated that a broad range of goods and services provided by Rowan and Era would be within the scope of the [Rowan/Halliburton] agreement." Id.

The Court of Appeals then considered "whether the separate and distinct insurance and

5

indemnity provisions in the Rowan/Halliburton agreement provide additional insured status to Era and Rowan for the liability arising out of the underlying claims." Id. at 367. Era and Rowan did not simply ask the court "to determine whether they are entitled to additional insured status under the four types of named insurance required under Paragraph 6. Id. at 368. They sought "additional protection as additional insureds to the full extent of its indemnity protection in Paragraph 3[2] based on the language in Paragraph 6(b)(2).[3] Id. The Court of Appeals held that there was no such obligation. The Court of Appeals reasoned that "the indemnity provision in Paragraph 3 contains its own insurance obligation, and there is no requirement that Halliburton name Era and Rowan as additional insureds on any insurance obtained pursuant to Paragraph 3 of the agreement." Id. Further, "the preface to Paragraph 6(b) limited the requirement to name

---

[2] Paragraph 3 of the Rowan/Halliburton provides the following regarding indemnity: Contractor shall at all times be responsible for and hold harmless and indemnify [Rowan] from and against all claims arising in connection herewith in favor of contractor, its parent, subsidiary and affiliated companies, . . . on account of illness, injury or death of contractor's group or damage to or loss of property owned, rented or provided by contractor's group. If it is judicially determined that the monetary limits of insurance required under this agreement or of the indemnities voluntarily assumed under this paragraph (which contractor hereby agrees will be supported either by available liability insurance, under which the insurer has no right of subrogation against company, or voluntarily self-insured, in part of in whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

[3] Under paragraph 6(a) "[e]ach party agrees to maintain at its own expense insurance of the types and in the minimum amounts as set forth hereunder. Paragraph 6(b)(2) requires the following endorsement to be part of the four named insurance policies: "[t]o the extent such party has assumed liability hereunder, naming the other party and its parent, subsidiary and affiliated companies as an additional insured." Paragraph 6(d) makes clear that the indemnity obligations and the insurance obligations are separate and distinct duties.

Era or Rowan as additional insured to the four insurance policies named in Paragraph 6(a)" by expressly providing "that the indemnity and insurance obligations are separate and distinct." Id. The Court of Appeals held that it is "contrary to the plain terms of the agreement to incorporate the additional insured obligation in the insurance provision into the indemnity obligation." Id.

Because the district court did not address what, if any, coverage might be available to Era or Rowan under the policies Halliburton was obligated to provide under Paragraph 6(a), the Court of Appeals remanded on the sole issue regarding what, if any, coverage might be available to Era or Rowan as additional insureds under the Halliburton policies[4] required under Paragraph 6(a). On remand, Halliburton and Era and Rowan filed cross-motions for summary judgment. Era and Rowan's motion focuses on the Comprehensive General Liability Policy. Halliburton seeks a judgment that neither the Comprehensive General Liability Policy nor the Excess Policy provide coverage.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of

---

[4] The relevant policies are the Comprehensive General Liability Policy and the Excess Insurance Policy. The agreement requires a $1,000,000 Comprehensive General Liability Policy, and the policy provides maximum coverage of $2,000,000 per occurrence. The Excess Policy provides coverage for claims exceeding $100,000,000 with a personal injury sub-limit of $25,000,000 for any one offense and in the aggregate.

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

The interpretation of an insurance contract and its exclusions is a question of law. See Jarvis Christian Coll. V. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa., 197 F.3d 742,746 (5th Cir. 2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). The intent of the parties as reflected in the policy determines the extent of the coverage. Id. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." Id.

An exclusion from coverage must be clear and unmistakable. See Roger v. Estate of Moulton, 513 So. 2d 1126, 1130 (La. 1987). When the language is clear, it must be enforced as written. See Reynolds v. Select Props. Ltd., 634 So.2d 1180, 1183 (La. 1994). If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. La. Civ. Code Ann. art. 2056 (West 1987). Exclusionary clauses are strictly construed against the insurer. See Borden, Inc. v. Howard Trucking, 454 So. 2d 1081 (La. 1983). If the language of the exclusion is subject to more than one reasonable interpretation, the interpretation that favors coverage is applied. See Reynolds, 634 So.2d at 1183. The insurer bears the burden of proving exclusions from coverage. Tunstall v. Stierwald, 809 So.2d 916, 921 (La. 2002).

8

**B. Coverage under the Comprehensive General Liability Insurance Policy** (ACE American Ins.)

Era and Rowan contend that, as additional insureds by virtue of endorsement 7 R,[5] they are entitled to coverage under the ACE American Insurance policy issued to Halliburton and to reimbursement of defense costs incurred in connection with the claims arising from the deaths of the Halliburton employees. Era and Rowan contend that the aircraft exclusion[6] is not applicable because there is a specific exception for liability assumed under an insured contract. An insured contract is defined as follows:

> **f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Exh. B at 13. Endorsement 28 in the policy adds back coverage for watercraft. Era and Rowan

---

[5] Endorsement 7 R is a blanket additional insured endorsement providing that, where Halliburton executes a contract that requires another party to the contract to be named as an additional insured, such party shall be considered as additional insured on this policy.

[6] **2. Exclusions**
This insurance does not apply to:
. . . .
g. **Aircraft, Auto or Watercraft**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
. . . .
This exclusion does not apply to:
. . . .
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

argue that the Rowan/Halliburton agreement is an insured contract because Halliburton assumed their tort liability to the Halliburton employees by virtue of the indemnity provision of the contract. Era and Rowan argue that the indemnity provision is applicable to show that the agreement is an insured contract, separate from the indemnity provision, under which the Court of Appeals for the Fifth Circuit held that there was no obligation to provide additional insured coverage.

Halliburton acknowledges that it had an obligation to name Era and Rowan as additional insured, and contends that it complied with that obligation. Halliburton argues that, although the Comprehensive General Liability Policy provides coverage for bodily injury, liability arising out of a helicopter crash is excluded under the aircraft exclusion. Halliburton further argues that there is no coverage under the Excess Policy because it provides no greater coverage that the underlying Comprehensive General Liability Policy.

Halliburton contends that the exception to the exclusion is inapplicable in this case because 1) the exception applies only if the insured contract is a contract for the ownership, maintenance or use of aircraft or watercraft; 2) the definition of "insured contract" applies only to contracts under which "you", meaning Halliburton as the named insured, assume liability; 3) even if the definition of "you" is broad enough to include Era and Rowan as additional insureds, the exception to the aircraft exclusion in inapplicable because Era and Rowan's liability does not arise from their assumption of a third party's tort liability under a contractual agreement, but from direct tort liability based on its ownership and operation of the helicopter; 4) Halliburton has not assumed liability under an insured contract because the Fifth Circuit held that the

reciprocal obligations resulted in no party being entitled to indemnity from the other.

Under the Rowan/Halliburton "Mutual Hold Harmless and Indemnity Agreement," Halliburton agreed to assume liability for its employees under Paragraph 3. The Fifth Circuit held that Halliburton had no obligation to name Era and Rowan as additional insureds to the full extent of its indemnity protection in Paragraph 3. Breaux v. Halliburton Energy Serv., 562 F.3d at 368. Specifically, "the indemnity provision in Paragraph 3 contains its own insurance obligation, and there is no requirement that [Halliburton] name Era and Rowan as additional insureds on any insurance obtained pursuant to Paragraph 3 of the agreement." Id. However, Era and Rowan are additional insureds under Paragraph 6, which is separate and distinct from Paragraph 3. The remaining question regarding coverage is whether the "aircraft exclusion" applies or is it negated by the "insured contract" exception.

The aircraft exclusion is not applicable in this case because the Rowan/Halliburton agreement is an insured contract, and the exception to the aircraft exclusion applies. Under the terms of the Rowan/Halliburton agreement, Halliburton holds Era and Rowan harmless for tort liability to Halliburton's employees and assumes liability for claims arising out of injury to Halliburton's employees. Moreover, the Fifth Circuit has held that the language of the agreement is all-encompassing, and its application is not restricted when aviation services are involved. Accordingly, the ACE Comprehensive General Liability policy provides coverage to Era and Rowan.

**C. Excess Policy**

The Excess Policy provides for losses exceeding $100,000,000. Era and Rowan

11

acknowledge that their losses as a result of the deaths of the Halliburton employees are below the Excess Policy's coverage for losses exceeding $100,000,000. Therefore, Halliburton is entitled to summary judgment that the Excess Policy is not applicable.

### III. CONCLUSION

There are no disputed issues of material fact, and the motion for summary judgment of Era and Rowan on the issue of coverage as additional insureds under Halliburton's Comprehensive General Liability Policy is granted. Halliburton's motion for summary judgment is denied as to the issue of coverage under the Comprehensive General Liability Policy, and granted as to the Excess Policy.

New Orleans, Louisiana, this  2nd  day of December, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**